Graham, Judge,
delivered the opinion of the court:
On August 3, 1917; the United. States Shipping Board requisitioned five certain ships which were under building contracts which the predecessors in title thereto of the plaintiff’s had contracted with the New York Shipbuilding Co. to construct. The vessels were finally completed by the Government but no payment for damages in connection with *676 the requisition of said contracts had been paid to the plaintiff or its predecessors in title prior to the making of the contract hereafter mentioned.
On May 1, 1919, the United States Shipping Board was and for some time prior thereto had been, the owner of five vessels which had been used in the trans-Atlantic trade. The plaintiff desired to purchase them. A contract of sale and purchase was entered into which is embodied in a resolution passed by the United States Shipping Board, the terms and conditions of which were accepted by the plaintiff. It contained the terms of purchase and the settlement of certain matters between the parties (Finding VIII).
Prior to the formal agreement the plaintiff had paid on account of the purchase of these vessels $1,175,000.00.
The plaintiff’s predecessors in title had also paid before the contracts for constructing the ships were originally requisitioned in August, 1917, which will be explained later, the sum of $1,733,509.19.
By agreement the amount to be paid for damages incident to the requisition of the contracts, for constructing these vessels originally, was fixed at $2,908,511.19, and cash to be paid at time of purchase at $379,647.81, and an item of $2,219,841.00 was allowed as a credit, all of which sums total $5,508,000, the tentative purchase price.
The plaintiff’s predecessors in title had contracts with the New York Shipbuilding Co. for the construction of the five vessels and had paid the amount above named to that company on account of the cost of construction. Before completion the contracts and incompleted vessels were requisitioned on August 3, 1917, by the Shipping Board, under authority of the President. The damages incident to this taking had never been settled or adjusted, and this explains the item above mentioned as allowed in settlement of requisition damages.
Plaintiff on accepting the proposal in the resolution of the Shipping Board, above mentioned, paid the cash amount agreed upon and mentioned above, viz, $379,647.81.
The vessels were at the time said contract was entered into in the service of the Shipping Board, and charters for hire *677 to the Shipping Board at a certain fixed rate for each were executed after the said sale, it being agreed that the Shipping' Board should pay for the use of the vessels until they were delivered to the plaintiff under the contract of sale. This hire for each of the vessels was paid and each of the vessels delivered, the last on the 30th of July, 1919.
Up to this point there seem to have been no differences. The said resolution which was accepted by the plaintiff (Finding VIII) contained the provisions out of which this litigation sprang, and these will now be considered.
One of the recitals of the resolution is as follows:
“ Whereas the cost to the Fleet Corporation of the completion of said vessels is stated to be the sum of $5,508,000.”
The second resolution is ás follows:
“ That this board consents to the audit of the books of the New York Shipbuilding Company by Castner, Curran & Bullitt, Inc., for the purpose of ascertaining the actual cost of construction of said vessels, and if such costs are determined to be less than the aforesaid sum of $5,508,000, the difference shall be paid by the comptroller to Castner, Curran & Bullitt, Inc.”
This audit of the books of the New York Shipbuilding Co. was made. It showed, according to the said books, the cost to be $5,310,120.10, which leaves a balance as against the tentative price of $5,508,000, of $197,879.90. It also appears from the findings that in addition to the cost thus shown, the board had expended on construction $90,495.47 after the delivery of the vessels by the New York Shipbuilding Company to the board. ' But as to this latter sum there is a dispute growing out of the contention of plaintiff that the contemplated cost under said resolution was confined to what the books of the New York Shipbuilding Co. showed as the cost of construction, and that the said expenditure of $90,495.47 after delivery should not be considered. With this contention we agree. The objection of the plaintiff to this last amount being taken as part of the actual cost of the vessels under the terms of the contract in working out the settlement must be sustained.
The next claim that the plaintiff urges grows out of the following facts: After the Shipping Board had requisitioned *678 the vessels it made certain changes and alterations to them, such as equipping them for gun mounts and changing the arrangements of the vessels in various ways. The plaintiff’s contention is that when it made the purchase of these vessels it was the intention of the parties and the purpose of the contract that the cost which it was to pay and which was to be shown by the books of the New York Shipbuilding Co. was the cost of construction according to the original plans and specifications, and that the additional cost incident to altering and changing the vessels should not be taken into account as part of the cost under the terms of the contract and credited to the defendant.
It is not necessary to go into a detailed discussion of the -different items of cost of changes which make up this claim. It is what the plaintiff cajls the amount expended on war equipment for the five vessels and amounts to $351,979.31. ’To allow this claim would require a very strained construction of the contract and make it necessary to read into it a meaning which is not to be found in its wording, nor, as we think, within its general purpose and intent. The Shipping Board had these vessels in the condition in which they then were and sold them to the plaintiff as they were with the obligation to make certain changes, which will be discussed later. There is nothing in the wording of the contract that can fairly be taken to mean that the parties had any other intention in view. The plaintiff bought the vessels as they stood and the Shipping Board agreed to make certain specified changes, alterations, and removals for the purpose of making them conform to the original plans and specifications, which appears from the following paragraph of the said contract resolution:
“ That this board will at its expense cause said steamers to be placed in seaworthy condition, including the repair of any damage received in the service, reasonable wear and tear only excepted; wilj. remove or cause to be removed the gun mounts, emplacements, and otter gear now on the steamers; and will cause the steamers to be restored, where the same have been altered, to the same condition as provided by the plans and specifications under which they were designed by restoring the frames, decks, beams, hatches, winches, derricks, fittings, etc., to the condition as shown by the original *679 plans of said vessels, and pay demurrage during the incidental detention at not exceeding the rate of requisition hire, provided that said cost of restoring the altered condition of the steamers and demurrage during the period of restoration shall not exceed $50,000 with respect to each ship.”
It is cjear from this paragraph that the plaintiff purchased these vessels as they were, subject only to the obligations of the Shipping Board to comply with the requirements of this resolution, and this the Shipping Board not only did but, according to its claim, it overdid and paid to the plaintiff certain amounts over and above the fifty thousand dollar-limit on each vessel named, and this overpayment it is seeking to recover as a counterclaim. We therefore hold that plaintiff can not recover on this last item of its claim.
We now come to the defendant’s counterclaim. It will be observed that the resolution last quoted deals with a number of matters as to which the defendant was to make an expenditure. They are separated by semicolons and they are distinct items, differing in character each from the other, and it is only as to the last, commencing “ and will cause the steamers to be restored,” etc., tijLat the limit of $50,000 as to each vessel seems to apply, and this is understandable when it is seen that the things tó be done under this last enumeration are of a general character; for instance, to cause the vessels to be restored, where the same have been altered, to the same condition as provided in the plans and specifications, etc., and it does not appear that the expenditure in this last enumeration was any more than $50,000 in the case of each vessel..
It will be seen that the last-quoted extract from the resolution covered an obligation of the Government, first, at its own expense to recondition these ships, ordinary wear and tear excepted; second, to cause the gun mounts, emplacements, and otter gear on them at the time to be removed at its own expense; third, at its own expense to restore the ships, where they had been altered, to the condition provided in the plans and specifications under which they were designed ; and fourth, that the “ cost of restoring the altered condition of the steamers and demurrage during the period *680 of restoration shall not exceed $50,000 with respect to each ship.”
But aside from this, the court has found that it does not appear what proportion of the sum paid to the defendant was applied to all or any of said vessels, or how much was. applied for each of the three purposes above named, viz, placing in seaworthy condition, removal of gun mounts, restoration of condition. Judgment should be entered for plaintiff for the amount due it on the difference between t'he estimated cost of the vessels and the amount found due by the audit of the New York Shipbuilding Company’s books-as heretofore stated, in the sum of $197,879.90, and it is so ordered.
SiNNOTT, Judge; GREEN, Judge; Moss, Judge; and Booth, Chief Justice, concur.